UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTOINE SAVINE,<br>*Petitioner,* | 18-cv-1846 (KAD) |
| v. | |
| INTERACTIVE BROKERS, LLC,<br>*Respondent.* | August 5, 2019 |

**MEMORANDUM OF DECISION RE:**
**RESPONDENT'S MOTION TO DISMISS THE PETITION TO VACATE (ECF NO. 14)**

Kari A. Dooley, United States District Judge

**Preliminary Statement of the Case**

On November 9, 2018, the Petitioner, Antoine Savine, filed a Petition to Vacate an arbitral award made in the United Kingdom. The Respondent, Interactive Brokers, LLC, which prevailed in the arbitration, filed the instant Motion to Dismiss the Petition on January 14, 2019. The Respondent asserts that pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York Convention, only the courts of the United Kingdom, where the arbitral award was made, have jurisdiction to vacate or modify the award. The Petitioner, also relying on the terms of the New York Convention, filed an objection on February 22, 2019, asking this Court to exercise jurisdiction, largely as a matter of public policy. The Court heard oral argument on July 16, 2019. For the following reasons, the Respondent's Motion to Dismiss the Petition is **GRANTED**.

**The Arbitration**

The Petitioner was a client of the Respondent, a Connecticut-based broker/dealer. (*See* ECF No. 1, ¶ 1.) The Petitioner used the Respondent's services for execution of currency exchange trades. (*Id.*) The Petitioner suffered significant losses as a result of his "short" positions on the

Swiss Franc against the Euro. (*Id.* ¶ 16.) To address the resulting deficit in the Petitioner's margin account, the Respondent liquidated certain positions in the account. (*Id.* ¶¶ 19 - 23.) However, a deficit of $631,002.88 remained. (*Id.* ¶ 24.) Pursuant to the Parties' arbitration agreement, the Respondent pursued the deficit in an arbitration proceeding before the London Court of International Arbitration. (*Id.* ¶¶ 1, 7, 26.) Following a two-day evidentiary hearing, the arbitrator entered a final award in favor of the Respondent. (*Id.* ¶ 38.) Thereafter, as indicated, on November 9, 2018, the Petitioner filed the Petition to Vacate in this Court.

**Discussion**

Whether this Court has jurisdiction over the petition to vacate turns on the provisions of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention" or the "Convention"). The United States is a signatory to the New York Convention and it is codified in Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208. As a preliminary matter, both parties agree that the arbitration award is a foreign arbitral award and is therefore subject to the provisions of the New York Convention. Accordingly, and because the Court agrees, the Court does not herein include the analysis by which such a conclusion is appropriately reached.

Article V(1)(e) of the New York Convention provides that enforcement of an arbitral award may be precluded if the award has been "set aside or suspended by a competent authority of the country in which, or under the law of which, the award was made." New York Convention art. V(1)(e). The question for this Court is whether this provision precludes efforts to set aside or suspend an award by a court in a country other than the country "in which, or under the law of which" the award was made. In *Yusuf Ahmed Alghanium & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 21 (2d Cir. 1997), the petitioner sought to confirm an award governed by the Convention. The respondent filed a cross motion to vacate the award. The district court confirmed the award. The

appeal concerned two issues: (1) whether the implied defenses read into the FAA by the courts were available under the Convention to defeat confirmation or enforcement; and (2) whether the FAA governed the cross motion to vacate the award. After a detailed review of the specified defenses available under Article V, the court concluded that the Convention provided the exclusive defenses to enforcement of the award. *Id.* at 20. The court then took up the question of whether the FAA governed the motion to vacate. As an initial matter, the court noted that:

> Those courts holding that implied defenses were inapplicable under the Convention did so in the context of petitions to confirm awards rendered abroad. Those courts were not presented with the question of whether Article V(1)(e) authorizes an action to set aside an arbitral award under the domestic law of the state in which, or under which, the award was rendered. We, however, are faced head-on with that question in the case before us, because the arbitral award in this case was rendered in the United States and both confirmation and vacatur were then sought in the United States.

*Id.* 20 – 21. After a discussion of the history of the Convention as well as the writings of various scholarly commentators,[1] the court held: "[f]rom the plain language and history of the Convention, it is thus apparent that a party may seek to vacate or set aside an award in the state in which or under the law of which, the award is rendered." *Id.* at 23. The court concluded:

> In sum, we conclude that the Convention mandates very different regimes for the review of arbitral awards (1) in the state in which, or under the law of which, the award was made, and (2) in other states where recognition and enforcement are sought. The Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief. *See* Convention art. V(1)(e). However, the Convention is equally clear that when an action for enforcement is brought in a foreign state, the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.

*Id*. Ultimately, because the United States was the country in which or under the laws of which the award was made, the court analyzed the motion to vacate the award under the FAA.

---

[1] Each journal or commentary cited concluded that vacatur of an award under the Convention can take place only in the country in which the award was made. *Id.* at 22.

3

Consistent with the language in *Yusef,* district courts in this circuit have rejected efforts to vacate arbitral awards made in foreign countries and subject to the New York Convention. *See, e.g.*, *Coutinho Caro & Co. U.S.A. v. Marcus Trading, Inc.,* No. 3:95CV2362(AWT), 2000 WL 435566, at *6 (D. Conn. Mar. 14, 2000) (only the courts of China, where the arbitral award was made, had jurisdiction to vacate the arbitration award entered against the petitioners); *Gerling-Kinzern Gen. Ins. Co.--U.K. Branch v. Noble Assur. Co.*, No. 2:06-CV-76, 2006 WL 3251491, at *4 (D. Vt. Nov. 1, 2006) (wherein court dismissed counts in the complaint seeking vacatur of an arbitral award that was not made in the United States). Most recently, in *Jolen, Inc. v. Kundan Rice Mills, LTD*, the district court enjoined the respondents from seeking vacatur of an arbitration award in an Indian Court because, in conjunction with other factors, the award had been made in and under the laws of the United States and therefore India did not have jurisdiction to vacate the award under the Convention. No. 19-CV-1296 (PKC), 2019 WL 1559173, at *4 (S.D.N.Y. Apr. 9, 2019).

Here, there is no dispute that the arbitral award was "made" in the United Kingdom pursuant to the arbitral laws of the United Kingdom.[2] As such, the United Kingdom is the country, pursuant to Article V(1)(e), in which vacatur must be sought. The United States, as a country of "secondary jurisdiction," may only refuse to enforce an award if enforcement is sought here. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 70-71 (2d Cir. 2017) (the country where the arbitration award is made has primary jurisdiction under the Convention, while all other signatory states have secondary jurisdiction for purposes of enforcement of the award); *International Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, Industrial Y Comercial,* 745 F.Supp. 172, 177 (S.D.N.Y. 1990) (the "competent authority" to entertain a motion

---

[2] Again, because the parties do not dispute this issue, the Court does not include the analysis by which courts determine where an arbitral award was "made" for purposes of the New York Convention.

to set aside or vacate an arbitral award is the court in the country where the arbitral award was made).

The Petitioner acknowledges this line of cases but nonetheless asserts that this Court can and should exercise jurisdiction over the petition to vacate under the provisions of the New York Convention. As discussed in *Yusuf*, Article V lists the very specific and limited circumstances under which a court of secondary jurisdiction may refuse to enforce an award. *Yusuf*, 126 F.3d at 19. One such circumstance is where enforcement of the award would violate the public policy of the country in which enforcement is sought. *Id.* (citing Art. V(2)(b)). It is this provision on which the Petitioner relies, asserting that by vacating the award, the Court would be rendering it unenforceable on public policy grounds. The Petitioner argues this is permitted under the New York Convention.

The public policy grounds asserted include the United States' interest in the enforcement of its laws governing the conduct of securities brokers and dealers.[3] In the first instance, the argument presupposes success on the merits of the Petition, *i.e.*, that the arbitrator erred when she rejected the Petitioner's claims made under those same laws, and therefore to enforce the award would be an affront to public policy. Regardless of the merits of the public policy argument, the Petitioner's reliance on this Article V defense is misplaced. This is not an action to enforce the award by the prevailing party against the Petitioner. The United States, as a country of "secondary jurisdiction," may only refuse to *enforce* an award under the provisions of Article V when such enforcement is sought. *See Yusuf*, 126 F.3d at 23; *AMCI Holdings, Inc.*, 850 F.3d at 70-71. While

---

[3] While it is not clear, to the extent the Petitioner asserts that primary jurisdiction lies with the United States because United States and Connecticut law were applied in the arbitration, this assertion is rejected. *International Standard Elec. Corp.*, 745 F.Supp. at 177 ("It is clear, we believe, that any suggestion that a Court has jurisdiction to set aside a foreign award based upon the use of its domestic, substantive law in the foreign arbitration defies the logic both of the Convention debates and of the final text, and ignores the nature of the international arbitral system."). *See also Coutinho Caro & Co. U.S.A., Inc*, 2000 WL 435566 at *5.

"the Convention contemplates various defenses to a petition to enforce an award, [it] does not provide an independent basis for seeking vacatur" in a court of a country of secondary jurisdiction. *PDV Sweeny, Inc. v. ConocoPhillips Co.*, No. 14-CV-5183 AJN, 2015 WL 5144023, at *6 (S.D.N.Y. Sept. 1, 2015), *amended*, No. 14-CV-5183 (AJN), 2015 WL 9413880 (S.D.N.Y. Dec. 21, 2015), *aff'd,* 670 F. App'x 23 (2d Cir. 2016). Accordingly, because this action is not an *enforcement* action commenced by the Respondent, but rather one of *vacatur* commenced by the Petitioner, the Petitioner's reliance on the Article V defense fails. *See Noble Assur. Co.*, 2006 WL 3251491, at *4 (rejecting petitioner's suggestion that the court should view the counts seeking vacatur as merely invoking its authority to decline to enforce or recognize the arbitral award where no enforcement proceeding had been brought).

This Court does not have subject matter jurisdiction over the Petition to Vacate the arbitral award and the Respondent's Motion to Dismiss the Petition (ECF No. 14) is **GRANTED**.

The Clerk is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of August 2019.

> */s/ Kari A. Dooley*
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE